

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

December 15, 2021

**Via ECF**
The Honorable Judge Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **Morales, et al. v. Rise Development Partners LLC, et al.**
   **21-CV-166 (PK)**

Dear Judge Kuo:

Our office represents Israel Morales, Juan Maldonado, Jose Elias Ramirez Melgar, Jose Evelio Menjivar Amaya, Jose R. Avila, and Jaime Amaya (collectively, "the Plaintiffs") and we submit this motion jointly with counsel for Rise Development Partners, LLC, Rise Concrete LLC, LBS Maintenance Corp., Barry Caldwell and Jose Alvarez (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached at the parties full-day Court-annexed mediation held on November 9, 2021.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

### I.    The Monetary Terms of the Settlement Agreement are Fair and Reasonable

   a.   The Settlement Amount

Plaintiffs and Defendants agreed to resolve all claims asserted in this action, including Plaintiffs' counsel's attorneys' fees, for the amount of $135,000.00 in six monthly payments commencing 35 days from receiving Court approval of the Settlement Agreement.

### b. Plaintiffs' Position

Plaintiffs brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). In general, Plaintiffs alleged that, as former employees of Defendants, that they were not paid proper overtime rates of pay when they worked in excess of forty (40) hours per week.

Plaintiffs are six former construction workers and carpenters who alleged that they were employed by Defendants for varying time periods within the six-year relevant statutory period under NYLL, ranging from four years of employment to three months of employment. All Plaintiffs alleged that they were regularly required to work five (5) to six (6) days per week and further alleged that they regularly worked an average of twelve (12) hours per shift at various construction sites throughout New York City. Plaintiffs alleged that they were paid a regular hourly rate for their first 40 hours of pay and received that same hourly rate of pay for their overtime hours. Plaintiffs alleged that they received up to 40 hours per week by check with all remaining – including overtime hours – paid to them in cash. In addition to being owed the "half-time" rate of overtime for each hour of overtime paid to them, Plaintiffs also alleged that they were not compensated at all for approximately three to four hours of overtime worked per week.

Additionally, all Plaintiffs alleged that they entitled to recovery under NYLL §195 for Defendants' failure to provide proper wage notices and wage statements.

In advance of the mediation, Defendants produced approximately 375 pages of records regarding the Plaintiffs' employment. The records included the documents required by Defendants at the purported time of hiring, pay records and time records for each Plaintiff. Our office had an opportunity to carefully review these documents with the Plaintiffs prior to the mediation. Based on such review, Plaintiffs acknowledged that the records indicated that Defendants began to pay time-and-a-half for overtime hours in or around 2019. Plaintiffs also recognized that, based on these records, there would be disputes as to number of days worked per week and the number of hours worked per week by each Plaintiff. Lastly, the records revealed serious disputes over the start date of employment for almost all Plaintiffs, based on the alleged hiring date that appeared in Defendants' records as well as the fact that the corporate entities in question had not formed until May 2018.

Based on our review of the records, we believed they showed unpaid wages in or around the amount of $100,000.00. Further, we believed that if Plaintiffs' testimony as to their start dates of employment and hours worked per week were accepted as true by a fact-finder, despite the presence of Defendants' records, Plaintiffs could have established in or around $200,000.00 to $250,000.00 in unpaid wages.

Although Plaintiffs were confident that they could recover the full amount of their alleged unpaid wages, Plaintiffs acknowledged the records produced by Defendants. Plaintiffs' counsel spent hours reviewing the hundreds of pages of records produced by Defendants in advance of the mediation and carefully explained to Plaintiffs the issues raised by these records. Although Plaintiffs disputed the accuracy of the records, Plaintiffs understood the risks of proceeding with litigation and their burden of establishing that the records were not accurate. As such, Plaintiffs agreed to the settlement amount of $135,000.00 as it fell squarely within the range of possible outcomes had this matter not settled at mediation and eventually proceeded to trial.

Furthermore, that these factual disputes would not be resolved until the time of trial at a much later date in the future favored Plaintiffs' decision to reach an early resolution of this matter and receive guaranteed payment pursuant to the abbreviated payment schedule described above.

### c. Defendants' Position

Defendants deny any and all liability or wrongdoing in this matter and aver that Plaintiffs did not work the number of hours they claim they worked for Defendants, were properly paid for all hours worked for Defendants, and that Defendants provided Plaintiffs with proper wage statements and notices as required under the New York Labor Law. Defendants also deny that Plaintiffs have accurately alleged the dates they were employed by any of the Defendants, and deny that Plaintiffs were ever employed by Defendants Rise Development Partners, LLC, LBS Maintenance Corp., or any of the individual defendants. While Defendants are confident that they would succeed in this action should it have proceeded through trial, they have decided to agree to a settlement to avoid the burdens and expenses of litigation.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $135,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after approximately six hours of negotiation before a qualified and experienced neutral at a Court-annexed mediation with all parties present. The parties had genuine, bona fide disputes over the dates of Plaintiffs' employment, the hours worked by Plaintiffs, and the pay received by Plaintiffs, but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

## II. The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such

broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 6 of the Settlement Agreement ("Release of Plaintiffs' Wage and Hour Claims") is appropriately-tailored to claims under the FLSA, NYLL and associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants, and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III. Distribution to Plaintiffs and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiffs

The parties agreed to a global settlement of $135,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $89.307.00. Each Plaintiff will receive an amount based on his calculation of damages, which accounts for the alleged dates of his employment, the alleged hours that he worked, and the alleged pay that he received (or did not receive). The allocations also take into account the records provided by Defendants and the individual defenses raised as to each Plaintiff. These amounts are included in Exhibit A of the Settlement Agreement.

#### b. Requested Attorneys' Fees and Expenses

Plaintiffs' counsel respectfully requests $1,040.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $400.00
- the costs of attempted service on all five Defendants and actual service of the Summons and Complaint on Defendants of all five Defendants in this matter: $620.00

Plaintiffs' counsel respectfully requests one-third of the settlement less the expenses ($133,960.00), or $44,653.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $45,693.00.

**Settlement Amount:** $135,000.00
**Attorneys' Expenses:** $1,040.00
**Settlement less Expenses:** $133,960.00 ($135,000.00 - $1,040.00)
**Requested Attorneys' Fees:** $44,653.00 ($133,960.00 / 3)

**Total payable to Attorneys:** $45,693.00 ($44,653.00 + $1,040.00)
**Total payable to Plaintiffs:** $89,307.00 ($135,000.00 - $45,693.00)

Plaintiffs' attorneys and their clients have retainer agreements that are reduced to writing and are signed by the clients. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has zealously advocated for their clients throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

Additionally, Plaintiffs' counsel provides their contemporaneous billing records, lodestar calculation and qualifications as a check on their contingency fee request. Those documents are attached hereto as **Exhibit 2**.

### IV.   Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of an agreed-upon wage-and-hour mediator selected through the Court-annexed mediation program. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.